IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **BARBARA HENNAGIR,**<br><br>      **Plaintiff,**<br><br>vs.<br><br>**UTAH DEPARTMENT OF CORRECTIONS, et al.,**<br><br>      **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:05CV1043DAK |

      This matter is before the court on Defendants' Motion to Dismiss Plaintiff's Complaint. The court held a hearing on Defendants' motion on May 9, 2006. Plaintiff was represented by Russell T. Monahan and Defendants were represented by Bridget K. Romano. Having fully considered the memoranda submitted by the parties, the arguments made by the parties at the hearing, and the facts and law relevant to this motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

      Plaintiff Barbara Hennigar brought this disability discrimination case against her former employer the Utah Department of Corrections alleging discrimination, denial of reasonable accommodation, and retaliation in violation of the Americans with Disabilities Act ("ADA"), and violations of the Rehabilitation Act of 1973, due process, and equal protection.

      Hennigar was employed as a physician's assistant at the Department of Correction's ("DOC") Gunnison facility from April 1987 through August 2005. She suffers from a number of

physical ailments for which she sought medical treatment. Plaintiff alleges that these conditions make her a person with one or more disabilities. In January 2002, DOC notified Plaintiff and all other clinical employees of a policy change and requirement that all DOC clinical employees become certified in Peace Officer Standards and Training (POST) as an ongoing condition of their employment. In October 2003, DOC notified Plaintiff that her job could be in peril for her failure to become POST certified. Plaintiff completed the academic portion of the POST training. Plaintiff, however, alleges that she was unable to complete the physical test portion of POST certification because of her disability.

DOC designated its Olympus facility in Draper, Utah for assignment of all employees who were unable to become POST certified as an alternative to termination. Plaintiff was advised that her employment would be terminated due to her lack of POST certification, but that she could accept a Physician Assistant position at the Olympus facility as an alternative. Plaintiff lives in Ephraim, Utah, and the new position would require an additional 80 miles commute each way.

On November 7, 2003, Plaintiff initiated a grievance with DOC regarding the POST certification requirement and requested a reasonable accommodation for her disability in writing. Plaintiff requested that she be excluded from the physical portion of POST certification or that her job title be changed so that she could be excluded from the POST certification requirement. Plaintiff alleges that DOC's denial of her request for accommodation violated her rights because DOC continued to employ nondisabled employees who were not POST certified, DOC refused to alter her job title even though it did so for other nondisabled DOC employees so that they would not have to obtain POST certification, and DOC refused to hire her as a contract employee even

though it hired additional nondisabled employees on a contract basis to avoid the necessity of POST certification.

Plaintiff processed her grievance according to the relevant administrative rules. After exhausting Steps I through IV of that process, Plaintiff sought and was granted leave under the Family and Medical Leave Act ("FMLA"). On April 21, 2004, while she was on long-term disability leave, Plaintiff initiated a Step V grievance before the Career Service Review Board ("CSRB"). The Hearing Officer determined that the sole issue before the CSRB was whether the DOC had properly applied its own administrative rules when offering Plaintiff alternate employment at the DOC's Olympus facility. On October 14, 2004, Plaintiff filed a Motion for Summary Judgment, and DOC filed a Motion to Dismiss the grievance the following day. On December 9, 2004, the Hearing Officer entered an Order denying Plaintiff's Motion for Summary Judgment and granting DOC's Motion to Dismiss. Plaintiff filed a Request for Reconsideration, which the Hearing Officer denied on February 11, 2005. Plaintiff did not appeal that Order.

In retaliation for her claims, Plaintiff alleges that DOC sought to change her job performance evaluation from exceptional to unsatisfactory in April of 2004. She also all alleges that in May of 2004 Defendant Garden altered her personnel file and performance evaluation.

Plaintiff was finally terminated by DOC on August 29, 2005. Plaintiff did not grieve her termination as permitted by state statute.

## DISCUSSION

Defendants have moved to dismiss each of Plaintiff's claims. Plaintiff has moved to amend her Complaint in order to clarify some of her claims. To the extent that the motions

overlap, the court will analyze the two motions together.

**1. ADA Claims**

Plaintiff's first, second, and third causes of action claim that DOC violated certain aspects of the Americans with Disabilities Act ("ADA"). DOC argues that these claims must be dismissed because it is entitled to Eleventh Amendment immunity and this court lacks subject matter jurisdiction over Plaintiff's ADA claims. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). The United States Supreme Court has "extended the Amendment's applicability to suits by citizens against their own States," and has recognized that "[t]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Board of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 361 (2001).

The Supreme Court has concluded that "the ADA can apply to the States only to the extent that the statute is appropriate under § 5 [of the Fourteenth Amendment]." *Id.* at 363. Title I does not meet this criteria and, therefore, does not abrogate a state's Eleventh Amendment immunity. *See id.* at 360. Plaintiffs' first three causes of action are based on Title I of the ADA and, therefore, barred to the extent that they are asserted against DOC.

Plaintiff now recognizes that she cannot assert her ADA claims against DOC or seek monetary damages. However, she has filed a Motion to Amend her Complaint to assert her ADA claims against Defendants Carver and Garden in their official capacities and to change her damages claim to one for prospective injunctive relief

The Supreme Court has clarified that the Eleventh Amendment bars the recovery of civil damages against the state but that it does not prohibit suits for injunctive relief against persons in their official capacity. That "Congress did not validly abrogate the States' sovereign immunity

from suit by private individuals for monetary damages under Title I does not mean that persons with disabilities have no federal recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for monetary damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908)." *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 n.9 (2001). Under *Ex parte Young*, when an official of a state agency is sued in his official capacity for prospective equitable relief, he is generally not regarded as "the state" for purposes of the Eleventh Amendment and the case may proceed in federal court. *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1188 (10th Cir. 1998).

Defendants acknowledge that under the narrow exception set out in *Ex parte Young*, 209 U.S. 123, 159-60 (1908), a government official sued in his or her official capacity for prospective relief only is not regarded as the "State" for purposes of determining Eleventh Amendment immunity. Despite this, Defendants argue that Plaintiff's proposed amendment fails to state a claim against the officially-named Defendants Carver and Garden and the Motion to Amend should be denied.

An official capacity defendant may be named and an official capacity action may be brought only in actions seeking prospective relief. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Therefore, this issue turns on whether the relief Plaintiff seeks is prospective or retroactive. Defendants argue that Plaintiff is no longer employed by DOC and that back pay and reinstatement constitute retroactive relief. Plaintiff argues that reinstatement is prospective.

The Tenth Circuit has stated that "[r]einstatement of employment is a form of prospective

equitable relief that is within the doctrine of *Ex parte Young*." *Meiners v. University of Kansas*, 359 F.3d 1222, 1232-33 (10th Cir. 2004) (finding due process claim seeking injunction ordering reinstatement was not barred by the Eleventh Amendment). Also, in a case brought under Title I of the ADA, the Tenth Circuit found a complaint that alleged an official's denial of a reasonable accommodation and wrongful termination and that sought "just and equitable relief" to be amendable to prospective injunctive relief within the *Ex parte Young* doctrine. *Frazier v. Simmons*, 254 F.3d 1247, 1255 (10th Cir. 2001) (relying, in part, on *Buchwald v. University of New Mexico Sch. of Med.*, 159 F.3d 487, 495 n.5 (10th Cir. 1998) (noting plaintiff sought prospective injunctive relief despite the fact that the harm she suffered by being excluded from the school occurred in the past)) .

In this case, Hennagir's proposed Amended Complaint seeks "injunctive relief requiring Defendant Carver and Defendant Garden to reinstate Plaintiff to her former position at the Defendant, DOC's, Gunnison facility." Am. Compl. ¶¶ 21, 33, 48. Therefore, it is not futile to allow Hennagir to amend her complaint to assert these causes of action under the ADA for the prospective injunctive relief of reinstatement. The proposed Amended Complaint states the ADA causes of action against both Defendants Carver and Garden. At the hearing, however, Hennagir acknowledged that it was Defendant Carver who could reinstate her. Therefore, the court finds that only Defendant Carver needs to be named in his official capacity. Hennagir's claim for back pay is retroactive and barred by the Eleventh Amendment. *See Meiners*, 359 F.3d at 1232 ("[C]laims for back pay, monetary damages, and retrospective declaratory relief are barred by the Eleventh Amendment.").

Defendants also assert that before this court may grant Plaintiff her requested injunctive

relief, the court must be able to find "a real and immediate threat of repeated injury." *Rizzo v. Goode*, 423 U.S. 362, 372-73 (1976).  Defendants argue that there is no threat that exists or can reasonably be alleged by Hennagir.  The real repeated injury, however, is the continual lack of her employment with DOC that Hennagir claims occurred as a result of an alleged violation of Hennagir's rights under the ADA.

Accordingly, the court grants Hennagir leave to file her Amended Complaint to assert her ADA claims against Defendant Carver in his official capacity for the prospective injunctive relief of reinstatement.  Defendants' motion to dismiss Hennagir's claims under the ADA, therefore, is denied.

**2. Title VII Claims**

Defendants move to dismiss any Title VII claims that Plaintiff may be asserting because she made no Title VII allegations in her April 7, 2004 or December 7, 2004 Charge of Discrimination to the UALD and EEOC and never received a statutory notice of her right to sue DOC under Title VII.  Hennagir acknowledges that she is not stating a claim under Title VII but referred to Title VII in her Complaint because the ADA refers to Title VII enforcement mechanisms.  Hennagir's proposed Amended Complaint attempts to clarify that she is not asserting any claims under Title VII.  The court also clarifies that there is no jurisdiction for any Title VII claims in this action.

**3. Section 1983 Claims Against DOC and Defendants in their Official Capacities**

Plaintiffs' fifth and sixth causes of action allege due process and equal protection violations under 42 U.S.C. § 1983.  Defendants argue that these claims are barred by Eleventh Amendment immunity.  The State of Utah has not waived its sovereign immunity and Congress

has not abrogated the State's immunity with respect to 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-67 (1989). The DOC is the arm of the state. *Hensel v. Office of the Chief Admin. Hearing*, 38 F.3d 505, 508 (10th Cir. 1994).

Defendants also argue that DOC and Defendants Carver, Chabries, and Garden acting in their official capacities are not "persons" subject to suit under 42 U.S.C. § 1983 and should, therefore, be dismissed from Plaintiff's fifth and sixth causes of action. "[N]either a state nor its officials acting in their official capacities are persons under § 1983." *Will*, 491 U.S. at 71. Furthermore, a governmental entity "that is an arm of the state for Eleventh Amendment purposes" is not a "person" under § 1983. *Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995).

Hennagir concedes that DOC is not a person within the meaning of § 1983 and should be dismissed. Hennagir also concedes that the individual Defendants, in their official capacities, cannot be held liable for monetary damages under § 1983. However, Hennagir contends that Defendant Carver should remain in the case in his official capacity for the purpose of the prospective injunctive relief Hennagir seeks under § 1983.

"Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10. Similar to the court's discussion above, Hennagir's claim against Carver in his official capacity for the prospective injunctive relief of reinstatement is not barred by Eleventh Amendment immunity. *See Meiners*, 359 F.3d at 1232-33 (finding "claim under § 1983 for reinstatement is not barred by the Eleventh Amendment"). In addition, qualified immunity does not apply to official capacity suits for

injunctive relief. *Id.* at 1233 n.3. Accordingly, the court will analyze Defendants other grounds for dismissal of Plaintiffs' due process and equal protection claims in turn.

**4. Due Process Claim**

Defendants also argue that Hennagir's fifth cause of action, alleging a violation of procedural due process, should be dismissed because Plaintiff received all of the due process to which she was entitled prior to her termination and Plaintiff failed to exhaust her administrative remedies or to seek any post-termination due process.

*1. Pre-Termination Process*

In general, pre-termination due process requires notice of the proposed action and an opportunity to respond. *Cleveland Bd of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). "[T]he pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions." *Id.* at 545-46. "[A]ll the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the [State] statute." *Id.* at 548.

Hennagir contends, however, that she was denied the substantive component of due process--the right to be free of arbitrary and capricious actions by the state in depriving her of her employment. "Fairness is insured by procedural safeguards which require proper notice and an opportunity to be heard. Fairness also dictates that the procedure itself not be abused or misused. No matter how complete the panoply of procedural devices which protect a particular liberty or property interest, due process also requires that those procedures be neutrally applied." *Clechon v. City of Chicago*, 686 F.2d 511, 517 (7th Cir. 1982).

Plaintiff asserts that the pre-termination process was fixed to ensure her termination.

Specifically, Plaintiff's Complaint lists seven due process violations: 1) the procedures used by Chabries, Carver, and DOC were contrary to the appeal process as provided for in Utah statutes and administrative regulations; 2) Chabries, Carver, and Garden engaged in ex-parte communications regarding Plaintiff's grievance; 3) Carver was involved in this case and should not have been the decision maker for the purpose of the grievance; 4) Garden and Carver instituted Department policy changes to retaliate against Plaintiff and to intimidate witnesses favorable to Plaintiff; 5) unknown DOC employees destroyed evidence favorable to Plaintiff in violation of GRAMA; 6) Garden altered evidence favorable to Plaintiff; and 7) Plaintiff was denied a due process hearing before an impartial tribunal. Compl. ¶ 61. Six of these seven complaints deal with the pre-termination process.

If this court construes the facts in a light most favorable to Hennagir, she has allegations that Defendants altered evidence favorable to her, destroyed emails, intimidated witnesses, and communicated with each other regarding Hennagir's grievance. At this stage of the litigation, the court cannot conclude as a matter of law that there is no set of facts which could be discovered that would allow Plaintiff to make out a claim that she was denied the substantive component of procedural due process.

Although there may be factual disputes regarding the merits of the pre-termination process, Defendants assert that Hennagir's due process claim is barred because of her failure to exhaust this claim through the procedures set out under Utah law. After Hennagir received her notice of potential termination, she initiated a grievance with the DOC that was processed through all of the administrative steps. Upon receipt of the DOC's Final Report, Hennagir sought and was granted FMLA leave and she sought relief from the CSRB. The CSRB

dismissed Hennagir's grievance, and Hennagir did not appeal that dismissal. Defendants arguments with respect to exhaustion apply to both pre-termination and post-termination due process because Hennagir did not institute any grievances or appeals with respect to her termination.

*2. Post-Termination Process*

Defendants acknowledge that Hennagir was entitled to a post-termination hearing through the CSRB, as is provided by the State's administrative procedures. But Defendants argue that Hennagir failed to initiate any proceedings with the CSRB after her termination and, thus, failed to exhaust her administrative remedies. Hennagir contends that the post-termination proceedings in this case were inadequate and DOC cannot rely on the CSRB appellate process when an employee's post-termination charges involve a violation of Constitutional rights.

Administrative regulations provide that the CSRB has no jurisdiction over "claims alleged to be based upon a legally prohibited practice as set forth in Section 34A-5-106, including employment discrimination on the basis of race, color, sex, pregnancy, childbirth, or pregnancy-related conditions, age . . . , religion, national origin, or disability." Utah Admin. R137-1-5(1). The rules also limit the ability of the CSRB to review allegations of wrongdoing by agencies. "An evidentiary proceeding is intended solely to receive evidence that either refutes or substantiates specific claims or charges. A proceeding may not be used as an occasion for irresponsible accusations, general attacks upon the character or conduct of the employing agency, agency management, or other employees. A hearing may not be used as a forum for making derogatory assertions having no bearing on the claims or specific matters under review." *Id.* R137-1-21(2)(b).

11

Utah law, however, provides procedures for career service employees which includes agency review, an appeal to the CSRB, and a judicial appeal to the Utah Court of Appeals. *See* Utah Code Ann. §§ 67-19a-404 to -408 (1995), Utah Code Ann. § 63-46b-16 (1998); Utah Code Ann. § 78-2a-3(2) (2001). Hennagir admits that she did not appeal the CSRB's dismissal of her grievance and that she did not pursue any statutory post-termination due process.

There is no basis for Hennagir's position that it would have been futile to use the procedures set out under Utah law. The CSRB is capable of determining whether DOC followed its rules and proper procedures in making its decisions. By failing to process her grievance to the next level, Hennagir waived her right to due process review and her grievance is considered settled on the decision made at the last step. Utah Code Ann. §§ 67-19a-401(4)(a), -401(4)(b). The last step of Hennagir's April 2004 grievance was the Hearing Officer's dismissal of that decision. The last step of Hennagir's dismissal proceedings was her August 2005 termination. Her failure to process her grievance to the next step waived any right to additional process. Hennagir cannot collaterally attack the CSRB proceedings and her termination in this court after having failed to avail herself of the due process provided under Utah law. *See Tonkovich*, 159 F.3d at 526; *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1255-56 (10th Cir. 1998).

Hennagir contends that she has no burden to exhaust her administrative remedies because her complaint is not as to the manner in which she was terminated but as to the reason she was terminated—alleged disability discrimination. That argument, however, responds only as to her ADA claims. To the extent that she is asserting a claim for inadequate due process protections, she has not demonstrated why agency review, a CSRB review, and an appellate court review could not address the claim. Her argument demonstrates that her complaints rest only upon her

ADA and discrimination claims, not with the alleged inadequacy of the due process protections. In any event, she failed to pursue the process available. Plaintiff did not seek her right to post-termination due process and has thereby failed to exhaust her administrative remedies. Therefore, this court dismisses Hennagir's due process claim asserted in her fifth cause of action.

### 5. Equal Protection Claim

Defendants argue that, while styled as an equal protection claim, Plaintiff's sixth cause of action for a violation of equal protection is simply a restatement of her first and second causes of action under Title I of the ADA. Defendants contend that Plaintiff's equal protection claim echos her ADA claim and complains that Defendants Carver's and Garden's refusal to grant her requested accommodation is a violation of equal protection. Plaintiff asserts that her equal protection claim is not based on the failure to provide her with reasonable accommodation but, rather, is based on disparate treatment between the disabled and the non-disabled without a rational basis.

Plaintiff's Complaint alleges three instances in which non-disabled employees were treated more favorably than she, a disabled employee, was treated. The Tenth Circuit is silent on whether a plaintiff may base a § 1983 equal protection claim upon alleged disability discrimination. Two district courts in this circuit have reached differing conclusions on the issue. *Compare Keller v. Board of Educ. of the City of Albuquerque*, 182 F. Supp. 1148, 1159-60 (D.N.M 2001) (finding ADA preemption inadequate to dismiss § 1983 equal protection claim founded on disability discrimination) *with Cisneros v. Colo.*, 2005 WL 1719755 (D. Colo. 2005) (holding ADA's detailed remedial scheme bars party's § 1983 claim alleging disability discrimination). The three circuit courts of appeal that have addressed this issue have held the

ADA's remedial scheme preempts a private mean of redress under § 1983. *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997).

Based on the decisions of the three circuit courts that have addressed this issue, the court concludes that Plaintiff may not bring a cause of action under §1983 to vindicate rights created by the ADA. *Vinson*, 288 F.3d at 1156; *Alsbrook*, 184 F.3d at 1011; *Holbrook*, 112 F.3d at 1531. The right to a reasonable accommodation is governed by the ADA. By simply restating her ADA claim, Hennagir fails to state an equal protection claim under § 1983.

Moreover, Hennagir cannot state an equal protection claim based only on the fact that other employees were treated differently. The Equal Protection clause is "triggered when the government treats someone differently than another who is similarly situated." *Buckley Const., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir. 1991). The Equal Protection Clause "embodies a general rule that States must treat like cases alike but treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793 (1977). Plaintiff must, therefore, show that Carver and Garden treated her differently than others 'similarly situated' and that this difference lacked a rational basis. *Tonkovich*, 159 F.3d at 532.

In this case, Hennagir claims that she was disabled and that she was treated differently than non-disabled persons. Hennagir fails to identify disparate treatment between persons who are similarly situated. Hennagir has not identified a single, similarly situated, disabled employee who was treated differently. If she is being discriminated against because she is disabled, it is a claim under the ADA, not an equal protection claim.

Even if Hennagir has stated an equal protection claim, the equal protection violation that

Hennagir alleges is not clearly established because there is no Tenth Circuit law on the issue and two district courts in this circuit are split. Accordingly, the court grants Defendants' motion to dismiss Hennagir's equal protection cause of action.

## CONCLUSION

Based upon the above reasoning, Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. The claims remaining in this action include Plaintiff's three causes of action under the ADA as stated against Defendant Carver for the prospective injunctive relief of reinstatement. Plaintiff's remaining claims and all other Defendants are hereby dismissed from this case.

DATED this 31st day of May, 2006.

BY THE COURT:

DALE A. KIMBALL
United States District Judge