IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BARBARA HENNAGIR, | |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| UTAH DEPARTMENT OF CORRECTIONS, et al., | Case No. 2:05CV1043DAK |
| **Defendants.** | |

     This matter is before the court on Defendants' Motion for Summary Judgment.  The court held a hearing on Defendants' motion on March 5, 2008.  Plaintiff was represented by Russell T. Monahan, and Defendants were represented by Anne E. Mortensen and Bridget K. Romano.  Having fully considered the memoranda submitted by the parties, the arguments made by the parties at the hearing, and the facts and law relevant to this motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

     This is an employment discrimination case brought against Plaintiff's former employer, the Utah Department of Corrections.  Plaintiff asserts three causes of action under the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA") for discrimination, denial of reasonable accommodation, and retaliation.  Plaintiff also asserts a fourth cause of action under the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 791 ("Rehabilitation Act"), alleging that the

1

acts described under the other three causes of action also constitute violations of the

Rehabilitation Act.

Plaintiff Barbara Hennigar was employed as a physician's assistant ("P.A.") at the

Department of Correction's ("DOC") Gunnison facility ("CUCF") from April 1997 through

August 2005.   Plaintiff's job duties included taking inmate medical histories, performing

physical examinations, ordering and reviewing lab tests and results, prescribing medication, and

overseeing nursing care.  Therefore, Plaintiff's job required her to have daily contact inmates.

When Plaintiff was hired in 1997, her position did not require her to be POST certified.[1]

Clinical staff, such as Plaintiff, had previously been required to be POST certified, but the

requirement was eliminated in response to staff shortages. During the time that medical staff

were not required to be POST certified, at least one staff employee was assaulted by an inmate.

The employee sued the DOC, alleging in part that DOC had violated her civil rights by failing to

adequately train her to defend herself against potential inmate assault.

In 2001, the DOC administration again determined to require its clinical staff to be fully

trained and POST certified.  The POST certification also enabled the clinical staff to be covered

under the State's Public Safety Retirement program.  In January 2002, DOC notified Plaintiff and

all other clinical employees of the policy change and requirement that all DOC clinical

employees would need to become POST-certified as a condition of their employment.  When

DOC's staff began taking POST training during the Fall of 2002, DOC training director Dennis

---

[1]  To obtain POST certification, individuals must be United States citizens, pass a
background check, and satisfy certain physical fitness requirements.  POST certification
standards are administered and controlled by the Peace Officer Standards and Training Council.

Hutchinson sent an email excusing Plaintiff from the written and physical tests for medical reasons. Plaintiff considered the email from Hutchinson to be a "waiver." But she admitted that she understood that if she did not take and pass the physical fitness testing, she could not become POST certified. Plaintiff participated in POST physical training by walking the same course her co-workers ran or by using a treadmill or stationary bicycle during inclement weather. However, because Plaintiff did not take the physical test, she did not become POST certified.

Plaintiff claims to suffer from several autoimmune disorders including fibromyalgia, lupus, and Sjogren's disease. Plaintiff was diagnosed with lupus in the late 1980s by a California rheumatologist. In 2002, however, a Utah rheumatologist who evaluated Plaintiff found no evidence of any active autoimmune disease. In August 2004, another Utah physician treating Plaintiff noted that Plaintiff had "no complaints referable to the [diagnosis] of lupus and it is not clear . . . whether her arthritic complaints have anything to do with lupus." Her physician also noted that Plaintiff's "disability appears to be associated with orthopedic problems" for which Plaintiff was being treated by Dr. Jeffrey Smith, an orthopedic surgeon. Plaintiff has undergone hip and shoulder replacement surgery.

In October 2003, DOC notified Plaintiff that she could not remain in her position at CUCF because of her failure to become POST certified. DOC determined that employees who could not meet POST certification requirements would be offered similar positions in a higher security environment. DOC's Olympus facility in Draper, Utah, houses the prison's mental health population and was designated as a higher security facility for non-certified medical staff. Plaintiff was one of ten clinical employees offered the alternate employment at the Olympus facility because they failed to become POST certified.

3

On November 7, 2003, Plaintiff filed a grievance requesting that DOC permit her to remain in her position at CUCF although she was not POST-certified.  Plaintiff stated that such an action would be a reasonable accommodation.  Plaintiff's supervisors were satisfied with her performance and wanted to keep her on the medical staff.  However, her supervisors did not have the authority to grant an exception to the POST certification requirement.

On November 21, 2003, DOC's Division of Institutional Operations Director issued a Step 3 grievance response to Plaintiff explaining that she could not remain in a now POST-certified position.  The director noted that he did not have the authority to grant an exemption, but that Plaintiff had the option of transferring to a non-POST certified P.A. position at the Olympus facility in Draper.

Ten days later, on December 1, 2003, Plaintiff responded that she objected to the transfer to the Olympus facility because it was too far from her home in Ephraim, Utah.  She again asked to be allowed to stay at CUCF.  On December 4, 2003, DOC's Human Resources Manager sent Plaintiff a letter notifying her that all medical staff working in positions requiring POST certification had to be certified by January 17, 2004.  Plaintiff was again offered a transfer to a non-POST certified P.A. position at the Olympus facility.

Plaintiff was allowed to meet with DOC's Deputy Director Scott Carver based on her grievance.  In her meeting with Carver, Plaintiff proposed that DOC giver her a different job title, such as "P.A. supervisor" or "P.A. assistant administrator," and assign her an additional duty to remove her from the P.A. job classification.  She also proposed that she be permitted to remain in the job and that it not be POST certified until after she left the position.  Carver took Plaintiff's requests under advisement, but denied them on March 24, 2004.  Carver directed Plaintiff to

4

arrange a date to transfer to the Olympus facility.

Plaintiff did not want to work at the Olympus facility because she was not hired to work in Draper and Draper was a significant distance from her home. Defendant claims that she could not drive to Draper from her home in Ephraim. In addition, she states that she could not move somewhere closer to Draper because her husband works in Manti, Utah.

Instead of reporting to work at the Olympus facility, Plaintiff filed a Charge of Discrimination with the UALD and the EEOC on April 7, 2004. Therefore, Plaintiff remained in her P.A. position at CUCF. Plaintiff alleged that DOC had discriminated against her because of her disability. On April 20, 2004, Plaintiff forwarded a note from her physician advising that daily travel to the Olympus facility could place Plaintiff at risk for "possibly life threatening" phlebitis or embolus. Plaintiff's physician stated that he advised Plaintiff not to travel more than thirty minutes at a time until she completed a medical consultation at the University of Utah. Plaintiff did not proceed with a consultation at the University of Utah. In response to the note, however, DOC placed Plaintiff on a "temporary transitional agreement" whereby she would not be required to travel for more than thirty minutes while at work.

Plaintiff was given a new transfer date of May 10, 2004. On May, 3, 2004, Plaintiff requested that DOC provide her with a "reasonable accommodation" so that she could continue in her P.A. position at CUCF. Plaintiff stated that she would go on leave under the Family and Medical Leave Act ("FMLA") if DOC did not give her a positive response. DOC did not allow Plaintiff to remain in her P.A. position at CUCF.

Rather than report to the Olympus Facility on May 10, 2004, Plaintiff went on FMLA leave. Accordingly to Plaintiff, stress-related symptoms were one of her reasons for taking the

medical leave.  While on leave, DOC reviewed the classification of its medical positions but decided to proceed with the POST certification of the physician's assistant and other clinical positions.  On July 6, 2004, the Director of Institutional Operations notified Plaintiff by letter that the CUCF position would be POST certified effective July 30, 2004.  The letter again offered Plaintiff a position at the Olympus Facility and requested that Plaintiff respond to the letter by July 16, 2004.  Plaintiff did not respond.

After Plaintiff exhausted her FMLA leave, she went on long-term disability to undergo and recuperate from hip and shoulder surgeries.  While on leave, on December 7, 2004, Plaintiff filed a second charge of discrimination alleging retaliation in violation of the ADA.  The EEOC issued a determination in March 2005, and the DOC engaged in a conciliation process.

Plaintiff returned from long-term disability in May 2005, and reported to work at CUCF. Her physician released Plaintiff to work for moderate work.  The release stated that Plaintiff should not lift more than twenty pounds and should not run or jump for ninety days.  When DOC administrators learned that Plaintiff had reported back to work she was placed on administrative leave until they could figure out what to do.

On June 28, 2005, DOC's Human Resources Director offered Plaintiff two possible accommodations.  DOC offered to pay Plaintiff's reasonable moving expenses for a transfer to a position at the Olympus Facility, or to allow Plaintiff to work in a non-POST certified lab technician position at CUCF with a reduction in pay.  Plaintiff was given until July 11, 2005 to respond to the offer.  Plaintiff rejected both proposals.

On August 10, 2005, the DOC offered Plaintiff a non-POST certified position as a utilization review case manager, located at the CUCF at the same rate of pay as her physician's

assistant position.  This position had been created expressly for Plaintiff by one of Plaintiff's

supervisors who wanted to retain her at the DOC.  The position required a medical background

and included auditing, reviewing, and monitoring contract care of inmates.  Plaintiff refused the

job because it would not allow her to do the P.A. job she had been doing previously.

On August 29, 2005, DOC terminated Plaintiff's employment because she no longer met

the minimum qualifications for the CUCF P.A. job and Plaintiff had refused all of the other

positions that were offered to her.

## DISCUSSION

Defendants move for summary judgment on each of Plaintiff's claims.  Under both

Plaintiff's discrimination claim and reasonable accommodation claim, Defendants contend that

Plaintiff cannot establish that she is disabled or a qualified individual with a disability. On her

discrimination claim, Defendants also argue that they asserted a legitimate, non-discriminatory

reason for terminating Plaintiff and Plaintiff has not shown that Defendant's reasons for

terminating her were a pretext for discrimination.  On Plaintiff's failure to reasonably

accommodate claim, Defendants assert that she has not shown that Defendants failed to offer her

a reasonable accommodation.  Next, Defendants argue that Plaintiff's claims of retaliation under

the ADA and the Rehabilitation Act fail because none of the claimed retaliatory acts were

"materially adverse actions."  And, even if they were, Defendants had a legitimate, non-

retaliatory reason for its actions.  Finally, Defendants argue that Defendant Scott Carver, who is

named in his official capacity, should be dismissed because he is no longer employed by the

Department of Corrections and, thus, has no authority to provide Plaintiff with injunctive relief.

**1. Discrimination Claim**

    **A. Prima Facie Case of Discrimination**

    To make out a claim for disability discrimination under the APA, Plaintiff "must show that (1) she is disabled within the meaning of the ADA; (2) she is qualified for her employment position; and (3) the defendant discriminated against her because of her disability." *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1128 (10th Cir. 2003).

    Defendants contend that Plaintiff cannot make out a prima facie case of disability discrimination because she is neither disabled nor qualified for the P.A. position at CUCF. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The Rehabilitation Act provides the same definition of disability. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). Plaintiff asserts that she has substantially limiting impairments and DOC regarded her as having such an impairment.

    "Whether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 483 (1999). The burden is on Plaintiff to "articulate with precision the impairment alleged and the major life activity affected by that impairment." *Doebele v. Sprint/United Management*, 342 F.3d 1117, 1129 (10th Cir. 2003). Plaintiff must prove her disability "by offering evidence that the extent of the limitation in terms of [her] own experience . . . is substantial." *Id.* Whether Plaintiff has an impairment and whether the impairment affects a major life activity is a question of law. *Id.* Although the question of whether an impairment is substantially limiting is ordinarily a factual question for a jury, it may

be evaluated by the judge in a motion for summary judgment.  *Id.* at 1130 n.5.

First, Plaintiff argues that because Defendant previously recognized that she was disabled, the court need not make a determination as to whether Plaintiff had a physical impairment that impacted a major life activity.  Plaintiff claims that her supervisors, who were medical professionals themselves, recognized that she was disabled and repeatedly acknowledged that she was sufficiently disabled to prevent POST certification.

Under the standard for a "regarded as disabled" claim, Plaintiff must show more than Defendants regarded her as somehow disabled, she must show that they regarded her as disabled under the ADA.  Under the ADA, Plaintiff must show either that Defendants mistakenly believed that she had a physical impairment that substantially limited one or more major life activities or mistakenly believed that an actual, nonlimiting impairment substantially limited one or more major life activities.  *Lanham v. Johnson County*, 393 F.3d 1151, 1156-57 (10th Cir. 2004).  "In both cases, it is necessary that a covered entity entertain misperceptions about the individual–it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting."  *Doebele*, 342 F.3d at 1132-33.  "These misperceptions often 'result from stereotypic assumptions not truly indicative of . . . individual ability."  *Id.*  (citations omitted).  "'Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.'"  *Id.* (citations omitted).

Accordingly, the rationale for the "regarded as" theory is to combat myths and stereotypes that operate to exclude individuals who have disabilities or are regarded as having such.  While her supervisors may have acknowledged that Plaintiff was unable to become POST certified,

there is no evidence that Defendants told her not to attempt POST certification because of physical impairments.  Instead, Defendants repeatedly told Plaintiff that she needed to become POST certified.  And, Plaintiff in fact participated in some of the POST training.  Plaintiff asserts that she received an email from a supervisor excusing her from POST certification, but she also testified that she knew that if she did not become POST certified should could not continue in her position.  There is no evidence that Defendants harbored myths or stereotypes about Plaintiff that kept her from participating in the POST certification process.

Next, Plaintiff asserts that she suffers from a variety of physical impairments, including: total hip replacements; advanced avascular necrosis; left shoulder surgery; lupus,; osteoarthritis; fibromyalgia; Sjogrins; rheumatic disease; and knee joint disorder.  Defendants claim that Plaintiff has not met her burden to articulate her disability with precision.  Plaintiff was diagnosed with lupus, but recent medical records contain no evidence of a definitive diagnosis of autoimmune disorder.  In August 2004, Dr. Armstrong concluded that any impairments were of an orthopedic nature.   Plaintiff claims that she has a long history of impairment and, while the symptoms may occasionally subside, the impairment remains.

In *Williams v. Kerr-McGee Corp.*, 110 F.3d 74 (10th Cir. 1997), the court noted that it is not enough to merely list impairments–a plaintiff must prove that the impairments substantially limit one or more major life activity.  "The regulations provide that in determining whether a person is substantially limited in a major life activity, the fact finder should consider the nature and severity of the impairment, its expected duration, and its expected permanent or long term impact."  *Id.* at *6.  In *Williams*, the plaintiff's impairment was lupus, but the plaintiff "did not explain how *often* her symptoms occurred, how *often* she was unable to perform or was limited

in her ability to perform the implicated life activities, or how her ability to perform these life activities compared to the average person." *Id.* at *7. Plaintiff also failed to "offer the opinion of a medical expert regarding how lupus affects the body, what stage of lupus she had at the time she worked for Kerr-McGee, which of her symptoms were associated with lupus, and how her symptoms impacted her major life activities." *Id.*

Therefore, even if this court finds Plaintiff has shown she has an impairment, she must establish that her impairment substantially limits her ability to participate in a major life activity. *Id.* "Merely having an impairment does not make one disabled for purposes of the ADA." *Toyota*, 534 U.S. at 198. To be a major life activity, the activity in question must affect activities of "central importance to daily life." *Id.* at 197. Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working." *Doyal,* 213 F.3d at 495-6.

In this case, Plaintiff contends that her disability prevented her from passing the POST certification physical testing, which included running, push ups, and other physical exertion. Plaintiff submits that her physical impairments substantially limit the following major life activities: sleep; running; lifting more than twenty pounds; bending and flexing; bathing; climbing stairs; biking; and sitting. Strenuous physical activity, however, is not a major life activity. *Mackenzie v. City and County of Denver*, 414 F.3d 1266, 1275 (10th Cir. 2005). Running and jumping are not major life activities. *Ruggles v. Keeber Co.*, 224 F. Supp. 2d 1295, 1301 (D. Kan. 2002). Bicycling is also not a major life activity. *Rosa v. Brink's Inc.*, 103 F. Supp. 2d 287, 290 (S.D.N.Y. 2000). Plaintiff also fails to cite any case law, and the court has not located any cases, supporting her assertion that bending and flexing is a major life activity.

11

In addition, when Plaintiff returned from disability leave after her hip and shoulder surgeries, her doctor placed certain limitations on Plaintiff's activity, such as lifting more than twenty pounds, for a period of ninety days.  Temporary limitations from those surgeries are insufficient to meet Plaintiff's burden under the ADA and the Rehabilitation Act.  Even if the limitation on lifting was permanent, an "inability to lift heavy objects does not constitute a substantial limitation on a person's overall ability to lift."  *McCoy v. USF Dugan, Inc.*, No. 01-3189, *2 (10th Cir. July 3, 2002) (unpublished opinion).

Bathing has been recognized as falling into the category of the major life activity of performing manual tasks.  *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 201-02 (2002).  Plaintiff does not articulate which of her physical impairments limits her ability to bathe.  But Plaintiff testified in her deposition that she is able to shower.  Thus, she is caring for herself despite being unable to bathe.

The other major life activities identified by Plaintiff include sleeping and sitting.  The Tenth Circuit recognizes sleeping as a major life activity.  *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1254 (10th Cir. 2001).  Plaintiff, however, has not demonstrated that her sleeping difficulties have been "severe, long term, or ha[ve] a permanent impact."  *Pack v. K-Mart*, 166 F.3d 1300, 1306 (10th Cir. 1999).  Plaintiff's medical records indicate that she only once requested medication to help her sleep.  This type of temporary request does not meet the standards required..

Sitting is recognized as a major life activity.  *Doyal v. Oklahoma Heart Inc.*, 213 F.3d 492, 495-96 (10th Cir. 2000).  Again, however, Plaintiff does not identify which of her physical impairments limit her ability to sit, nor provides any evidence beyond her own assertions to

support her claim that she is substantially limited in her ability to sit.  *Helfter v. UPS*, *Inc.,* 115 F.3d 613, 616 (8th Cir. 1997).

Moreover, even if Plaintiff is substantially limited in her ability to sleep and sit, she does not demonstrate how those limitations prevented her from becoming POST certified.  Plaintiff is not so limited in these major life activities to make her too disabled to perform a P.A. position that does not require POST certification.  Therefore, she is limited only to the extent that the P.A. position requires her to be POST certified.  Sleeping and sitting appear to have no connection with her ability to meet the physical requirements of POST certification.

Plaintiff has not met her burden of demonstrating that she is disabled under the ADA. However, even if Plaintiff had met her burden, she must next demonstrate that she is "a qualified individual with a disability."  *Milton v. Scrivner Inc.*, 53 F.3d 1118, 1123 (10th Cir. 1995).  "'The ADA defines "qualified individual with a disability' as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  *Id.* (citations omitted)    The Tenth Circuit applies a two-part analysis for determining whether a person is qualified under the ADA: "'First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue.  Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him [or her] to perform those functions.'"  *Id.* (citation omitted).

The regulations implementing the ADA "define essential functions as 'those functions that the individual who holds the position must be able to perform unaided or with the assistance

of a reasonable accommodation.'"  *Id.* at 1124 (quoting 29 C.F.R. 1630, App. § 1630.2(n)).  "The initial inquiry in determining whether a job requisite is essential is whether an employer actually requires all employees in the particular position to perform the allegedly essential function."  *Id.* "An employer's judgment is also relevant evidence to be considered."  *Id.*  "This inquiry is not intended to second guess the employer or to require him or her to lower company standards."  *Id.* Significantly, the Tenth Circuit recognizes that "[t]he ADA does not limit an employer's ability to establish or change the content, nature, or functions of a job.  It is the employer's province to establish what a job is and what functions are required to perform it."  *Id.*  "It is a defense to a charge that a standard screens out disabled persons that the standard is 'job-related and consistent with business necessity.'"  *Id.* (quoting 29 C.F.R. § 1630.15(c)).

Plaintiff argues that she is qualified to perform the P.A. job with or without reasonable accommodation.  But Plaintiff cannot satisfy the job requirements to be POST-certified which is now a mandatory qualification for the P.A. position at CUCF.   Plaintiff erroneously relies on 42 U.S.C. § 12111(8) for the proposition that the court must rely on the essential functions that were established before she interviewed or was hired.  Tenth Circuit case law does not require a court to look at the essential functions of a job at the time the employee was hired.  In fact, *Milton* specifically states that an employer is not limited in its ability to change the functions or nature of a job.  *Id.* at 1124.  Moreover, Utah's Department of Human Resources Management Rules, which the DOC follows, provide that "management may assign, modify, or remove any employee task or responsibility in order to accomplish reorganization, improve business practices or process, or for any other reason deemed appropriate by the department administration."  Utah Admin. Code R477-3-3.

14

In this case, the DOC had provided several valid, job-related reasons for re-instituting POST certification as a requirement for clinical staff positions.  After a lawsuit by one employee, the State Risk Management Division recommended that DOC require clinical staff to POST certify.  Plaintiff argues that Defendants' claims regarding safety fail because the ADA only recognizes a direct threat to the safety of other individuals in the workplace and there is no safety concern based on Plaintiff's disability as she can perform her job without endangering the safety of others.  Safety, however, is an obvious concern in the prison setting.  Plaintiff has not presented any evidence rebutting Defendant's business judgment that the certification is necessary to reduce Defendant's liability.   This business necessity was based on the safety aspects and concerns present in a position that involves direct contact with inmates and the prior lawsuit against DOC for an assault.  Plaintiff's reliance on the direct threat defense to argue that she did not pose a threat to the safety of others is irrelevant to the case.

Because Plaintiff did not become POST certified, she must demonstrate that she perform the essential functions of the job with reasonable accommodation.  The parties disagree as to the reasonableness of the different accommodation options.  "When an employer selects among several possible reasonable accommodations, the preferred option is always an accommodation that keeps the employee in his or her existing job if that can reasonably be accomplished."  *Smith v. Midland Brake Inc.*, 180 F.3d 1154, 1171-72 (10th Cir. 1999).

DOC offered Plaintiff the ability to stay in a P.A. position if she transferred to another facility which had higher security.  DOC offered all employees who failed POST certification a transfer to the Olympus Facility.  Plaintiff rejected the transfer.  Plaintiff proposed three accommodations to remain in her position:  a waiver from POST certification; being

15

grandfathered into her position; and an alteration of her job title so that she was not required to be POST certified.  Defendants rejected Plaintiff's proposed accommodations and repeatedly told Plaintiff that to be a clinical P.A. at CUCF who interacted with inmates she would need to be POST certified.  Because Plaintiff objected to the transfer, throughout the ensuing years, DOC also offered Plaintiff other positions at CUCF that would not involve direct inmate contact. Plaintiff rejected those accommodations.

Plaintiff's request to be grandfathered into her position is the same request as asking DOC to waive the POST requirements.  DOC's failure to ensure that all employees in each position met the requirement of the Public Safety Retirement Act would have jeopardized the status of all the employees in Plaintiff's job classification.  An employer is not required to waive legitimate, non-discriminatory policies or displace another employee's rights to provide an accommodation.  *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000).  Moreover, Plaintiff's request to have her job title altered does not provide an accommodation that an employer was required to follow.  An employer is not required to make an employee a supervisor merely because they cannot meet the requirements for their current position.

In addition, an individual who "rejects a reasonable accommodation, aid, service, opportunity or benefit . . . will not be considered a qualified individual with a disability."  *Smith v. Midland Brake*, 180 F.3d 1154, 1177 (10th Cir. 1999).  Several district courts have relied on *Smith* to find plaintiffs who refused offered accommodations, transfers, and other positions not to be qualified individuals with a disability.  *Chan v. Sprint Corp.*, 351 F. Supp. 2d 1197, 1207-08 (D. Kan. 2005); *Willett v. State*, No. 96-3374, at *1 (10th Cir. Jul. 25, 1997) (unpublished opinion) *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 458 (6th Cir. 2004).  By rejecting

16

all of the DOC's offers to place her in alternative positions, Plaintiff cannot be deemed a "qualified individual."  Therefore, Plaintiff has failed to establish a prima facie case of discrimination under the ADA or the Rehabilitation Act.

### B.  Legitimate Reason for Decision & Pretext

Even assuming that Plaintiff had made out a prima facie case of discrimination, DOC provided a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment.  Once Plaintiff had failed to become POST certified and had exhausted all her available medical and disability leave, she rejected DOC's offers to maintain her employment in other positions.  An employee's rejection of a reasonable accommodation is a legitimate, non-discriminatory reason for termination.  *Jenkins v. Cleco Power LLC*, 487 F.3d 309, 317 (5th Cir. 2007).

Plaintiff has provided no evidence that DOC's decision was a pretext for discrimination. Plaintiff must show that the employer's reason for the challenged action is pretextual or unworthy of belief.  *Morgan*, 108 F.3d at 1323.  Plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

Plaintiff relies on a statement in a meeting regarding POST certification that no one would lose their job.  This statement, however, does not indicate that everyone would remain in the same job.  DOC decided that those employees who could not pass certification would need to

work in a higher security facility.  Plaintiff has not produced any evidence to show that terminating her after she refused four offers of continued employment was pretextual.  The evidence demonstrates that DOC attempted to retain her.  Nothing about DOC's actions suggests that they were taken in anything but good faith.

**2.  Reasonable Accommodation Claim**

Under the ADA, an employer is required to provide "reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business."  42 U.S.C. § 12112(b)(5)(a).  As analyzed above, however, Plaintiff cannot establish that she is a qualified individual with a disability.   Moreover, Plaintiff must show that she "could have been reasonably accommodated but for the employer's lack of good faith."  *Smith v. Midland Brake Inc.*, 180 F.3d 1154, 1174 (10th Cir. 1999).

Even though the court concludes that the DOC had no duty to accommodate Plaintiff, DOC gave her four offers of alternative employment.  DOC indisputably engaged in the interactive process.  There is undisputed evidence that Defendants considered Plaintiff's proposals, and offered their own reasonable accommodations.  Plaintiff cannot maintain a claim based on her refusal of the alternatives provided to her.  Plaintiff could not dictate to her employer which alternative job she should be assigned.  *Jenkins*, 487 F.3d at 309.  DOC was under no obligation to waive job requirements where doing so could have jeopardized her safety.  *Coski*, 795 P.2d at 1367.  Accordingly, Defendants' motion for summary judgment on Plaintiff's reasonable accommodation claim is granted.

18

**3.  Retaliation Claim**

Plaintiff claims retaliation occurred in four different ways:  1) Defendant attempted to force Plaintiff under threat of termination to transfer to the Olympus Facility 80 miles from her home; 2) Defendant refused to engage in the interactive process of determining reasonable accommodation; 3) Defendant sought to change Plaintiff's job performance evaluation from exceptional to successful; and 4) Plaintiff's supervisor actually altered Plaintiff's personnel file and performance evaluation.

Plaintiff's argument that Defendants failure to engage in the interactive process was retaliatory suffers the same fate as her separate claim for reasonable accommodation.  *See Lucas v. WW Grainer, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) (contention that Defendant retaliated by failing to reasonably accommodate and failing to engage in interactive process "merely reclothes . . . [an] ADA discrimination claim.").  A failure to grant Plaintiff's desired accommodations is not retaliatory.  Moreover, there is substantial evidence that DOC engaged in the interactive process.

Where there is no direct evidence of retaliation, a Plaintiff must establish that she engaged in protected activity, an adverse action occurred after or contemporaneous with her protected activity, and a causal connection exists between her protected activity and the employer's adverse action.  *Doebele*, 342 F.3d at 1135.  Defendants do not dispute that Plaintiff engaged in protected activity.  It is undisputed that the Plaintiff made multiple internal complaints of discrimination starting on November 7, 2003, a UALD complaint on April 7, 2004, and EEOC complaint on April 26, 2004, and a UALD complaint alleging retaliation on December 7, 2004.

19

Approximately one month after Plaintiff lodged her complaint, DOC informed her that she must either transfer to the Olympus Facility or lose her employment. Plaintiff claims that this action was materially adverse because the facility was 80 miles from her home and involved the treatment of mentally ill patients. An action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006). The ADA also makes it "unlawful to coerce, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

Defendants do not dispute that after Plaintiff filed her November 7, 2003 internal grievance, DOC offered her a transfer to the Olympus facility. This transfer was offered to several employees. All of the other employees accepted the transfer. Defendants proposed the transfers as a way to maintain Plaintiff's employment with DOC.

Plaintiff argues that a causal connection may be inferred by a temporal proximity between the protected activity and the adverse employment decision. Despite the fact that the transfer was offered two months after the grievance, the temporal proximity does not demonstrate that the transfer was intended as a retaliatory act. The transfer was offered as an accommodation to Plaintiff as a result of her failure to become POST certified. The court concludes that offering the transfer was not a materially adverse action or causally connected to Plaintiff's protected activity.

Defendants also argue that the alteration of Plaintiff's personnel evaluation was not materially adverse action because the overall evaluation remained successful and there is no

20

causal connection between the alterations to the performance evaluation and Plaintiff's charge of discrimination. While DOC's Human Resources Department was aware of Plaintiff's first discrimination charge on April 26, 2004, there is no evidence that the supervising doctor was aware of Plaintiff's charge. The evidence demonstrates that the supervising doctor questioned Plaintiff's supervisor because of a separate inmate lawsuit regarding the failure to provide necessary care. There is no evidence of a connection between the complaint and the change in the performance evaluation.

But, even assuming that Plaintiff could establish a prima facie case of retaliation, Defendants had a legitimate, non-discriminatory reason for the allegedly retaliatory employment decisions. DOC had a legitimate reason for moving any of the clinical staff who were not POST certified to a higher security facility. DOC had legitimate reasons for not granting a waiver of the POST certification requirements based on safety. There was also no requirement that DOC create a position for Plaintiff merely so she could remain uncertified. Furthermore, the reevaluation of Plaintiff's performance was based on a legitimate concern over the care she provided to an inmate. Plaintiff has not satisfied her burden of demonstrating any evidence of pretext. Accordingly, the court concludes that Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

Defendants ask that Scott Carver be dismissed in his official capacity because he no longer works at DOC. The court concludes that this request is moot given the court rulings that Defendants are entitled to summary judgment on all of Plaintiff's claims.

## CONCLUSION

Based upon the above reasoning, Defendants' Motion for Summary Judgment is

GRANTED.   The Clerk of Court is directed to close the case, with each party to bear its and her

own fees and costs.

DATED this 21st day of April, 2008.

BY THE COURT:

DALE A. KIMBALL
United States District Judge